All rise. Illinois Federal Court Court of Division is now in session. The order of Justice Margaret S. McBride is resolved. Good morning again. All right, we'll recall the case. 15-2205 Danielle Dovias v. Oak Park & River Forest High School District 200 Thomas DeHoff and John Elson Good morning, Justice McBride, Justice Ellis, Justice House. Nicholas Esposito for the appellant, Danielle Dovias. I may have to take my glasses off from time to time. It's not for drama. I have a little vision thing going on right now. Okay. May it please the court and counsel. This case is a case of interpretation of factual allegations in a complaint under existing law. This is not a dispute in the law. For nine years, Danielle Dovias has been a special education teacher at the high school. For nine years, she was an assistant boys track coach reporting to a different coach. For eight years, she was assistant girls cross country coach reporting to defendant Tarrant the last three years before he and Spellzer fired her. The year before she got fired and before she accused Tarrant of sexual harassment, he and the team, the cross country team, awarded her the most valuable player award. These unfounded statements in the complaint were made after the sexual harassment complaints. There are two different written documents. And in our belief, all suggest, in the least, inability to perform employment duties and lack of integrity in performing her employment duties. I'd like to address the statements one at a time, if you will. In September 14th, he said, the coach was verbally and physically aggressive towards me. How physical is he implying that it must have been for this coach to raise this concern at this level? Physical aggressiveness toward the coach, coupled with his concern that he had to protect himself and his students from her, we believe makes that actionable. He states, she had inappropriate contact with athletes. One's mind, in my belief, jumps to wondering or even imagining or concluding sexual contact or inappropriate touching or some other type of conduct. Otherwise, why would he raise it as her coach? It implies that she either committed a crime or some other actionable school safety rule or a state law violation, such as those covered by DCFS, in her teacher and student interrelationship. Interacting with students is what she does. It would be no different than suggesting a doctor or dentist or lawyer had inappropriate contact with a patient or client. And we know that in a lawyer case, that is sanctionable by the ARDC. I am prepared to bring forth solid evidence that a coach did the following. Our opponents argued that this is about opinion, not facts. Yet, Mr. Tarrant explicitly states he has solid evidence. As a matter of fact, not opinion. The evidence relates to her employment duties. He states, she was rolling around on a bed in a hotel alone with an athlete, as witnessed by another coach who walked in. Similar to my comments previously, what does that conjure in one's mind when they hear that? He makes the statement and defendants try to make light of it. They argue that he is expressing the opinion of a parent. As a parent of three daughters, I will tell you I would be more than concerned and would want a thorough investigation and action. And as the allegation was deemed unfounded. She was called after 2 a.m. by athletes who were drunk and high. She went to where the athletes were. She hung out with them. She took them home without notifying parents or the athletic office. So he's going to two different levels here. Suggesting she had a duty to notify the parents. Certainly suggesting that even though she was outside the premises, she still had a duty as a teacher and a coach to notify the athletic office. If she was present and did those things. He's charging her with contributing to the delinquency of a minor or minors. Is it a violation of some school or safety rule? Probably, most likely. And again, perhaps governed by the rules of the DCFS. Well, do we take it in the context of the entire email? Pardon me? These statements, they're followed by his, the suggestion I have a 13-year-old daughter. If any coach did the unsafe things this coach has done, I would be an extremely irritated parent. What does that suggest? Is that the suggestion of criminal activity? I would say this to her. By saying I'm a parent and these things were unsafe and I'd be irritated? I mean, how does that rise to the level of criminal activity? He doesn't get to take off his coach hat. He doesn't get to take off his teacher hat, co-teacher hat. He doesn't get to take off the rules of conduct under state law with respect to interaction with students. He doesn't get to take off any of those things. He tries to diminish. So if that's all it was, Judge, why say all these things in the manner that he did? Why make accusations? He made further accusations that suggested that. Let me water it down. It was my kid. I'm worried about my kid. Do we take it in the context of everything else that was going on in terms of these two people? That's, yes. Would I take that? Yes, I would take that in the context of it. But she made a charge against him. Yes. That was investigated. He then followed with these charges which were deemed unfounded. Yes. And just because they're in a school setting and just because, as the lower court said, this sounds like an employment case, it is an employment case. It is an employment case, but it's more than that. In the context of an employment case that might be a separate issue, in this context, they are fellow employees, but he's her supervisor. Yes. And he brought it to the level of his supervisor. So he took it from, you know, my wife and kid would be bothered if they knew that maybe the other parents of the kids would be bothered, that type of thing, but it's more than that. He said, I feel threatened. He said, I have to protect myself and protect these students from her. That takes it from the level of, I feel bad if I were a parent, I'd be worried. That's as if the parent, other than him, stepped up and said, I want protection from this woman. What about celebrated an athlete's accomplishment by drinking alcohol? Pardon me? What about the statement that she celebrated an athlete's accomplishment by drinking alcohol? That's one of the statements. Yes, yes. Okay. Are you still arguing that that was defamatory? Yes. It was a little difficult for me to understand exactly which statements you are claiming in your brief to be defamatory and which are not. The complaint adopted Exhibit A and Exhibit B. Well, those are two big documents with lots of words in them, lots of sentences, and I was trying to figure out which things are in front of us. And some of them have clearly been abandoned. You've dropped some of your arguments. So I'm trying to figure out exactly which statements are in front of us. That would be one of them as well, Judge. Okay. So there's those three statements on the second page of the email. Yes. Clearly, it seemed to me pretty clear you were alleging those. Yes. And then you're also talking about something on the first page, verbally and physically aggressive towards me. I got you on that. Are you also claiming inappropriate contacts with athletes? Oh, yes, absolutely. Okay. Yes, let me talk about the aggression for a minute and the verbal aggression. Could you talk about celebrating an athlete's accomplishment by drinking alcohol? Well, yes. I can't imagine me wanting one of my daughter's coaches to be celebrating one of my daughter's accomplishments when they're under 18 by drinking alcohol with them. That doesn't say that. I mean, excuse me. No, you're right. It does not. It does not say that. I'm just – that's what he says. But we have to give an innocence – we have to look for a reasonable innocence. That's fair. Okay. It does not – his statement does not say with them. It does not. And my position is in the context of all of this, everything else that's alleged, in the context of that, we think that's actionable. But I do concede and agree that he doesn't say her with them. But are you saying that he implies that? Yes. Is there something wrong with an adult drinking alcohol in the presence of a non-adult? Well, it says with them. It doesn't say in their presence. Well, it doesn't say with them either. No, it doesn't say with them. It says celebrated an athlete's accomplishment by drinking alcohol. It doesn't say who. It doesn't say where. You're right, Judge. It doesn't. Okay. Well, what are – I mean – No, I will clarify. You're right. I would concede that point on that allegation. Okay. Okay. Did you want to say more about physically aggressive? Yes, I did. Then let me start by asking you a question on that. Yes. So we're at the paragraph that begins with, I asked for a change last year because the coach was verbally and physically aggressive towards me. Yes. Wasn't this recounting what happened the previous year? I mean, there was a problem the previous year, and it was resolved in some kind of an agreement, a no-contact agreement, or maybe that's the wrong word. That's true. But there was something. Isn't this just sort of a paragraph talking about what – the past? I mean, it says, I asked for a change because of these things. It does, but it also includes in the quote, if I may, because I have it here, it also includes that it's BS. He used that word. It's BS. And to me, that paragraph, Judge, isn't an actionable paragraph. It's just motive for these comments. Okay. So you're not saying that these words were defamatory. Not in that paragraph where he talks about the past. You're saying this is part of the context. It gives context. In our opinion, it gives context to why he might do that. Okay. That's fine. But that's different than saying they're defamatory. That's right. Which statements in this September email are defamatory? Can you just put brackets around the sentences so we know what those are? Yes. Inappropriate contact with athletes. But that's that paragraph, sir. Physical aggressiveness against parents. But those are in that paragraph. No, I'm sorry. I was talking about I asked for a change last year. I'm not trying to push it into a corner. I'm just trying to understand what's in front of us exactly. It just wasn't completely clear. Well, I'll give you the phrases then, if I may. Okay. Please. And I apologize for the confusion. Verbally and physically aggressive toward me. Okay. Inappropriate contacts with athletes. I am prepared to bring forth solid evidence that as a coach she did the following. Right. One, two, and three. Which takes us out of opinion and fact. Rolling around in a bed in a hotel with an athlete as witnessed by another coach who walked in. Drinking with athletes. Hanging out with the athletes. And that's September. Okay. That's September. Okay. And then with respect, you want me to talk about November then? I only saw one in the November one. But you tell me. What I took from your brief was in the November one, which I guess was a grievance, a complaint, there's a list of things that are numbered and it says physically assaulted me. Number two says physically assaulted me by grabbing my arm and trying to force me into a room at the end of the school day. Yes. I think I saw that in your complaint. There are two different assaults, verbal and physical. Okay. Is there anything else in this grievance that you were? The only other thing would be his statement that a coach filed false reports about me in March of 2013, which resulted in a no contact action against him. Okay. Which paragraph is that in? Judge, I have it broken up. In the context of the genre that I'm trying to suggest here, he accused her of verbal and physical assault. And to that point, I wanted to talk about the verbal assault for a minute, if you don't mind. Of course. He says she left her classroom and assaulted me for over 15 minutes last year over my cross country program. So apparently he stood there for 15 minutes and then took the charge to HR and complained it was a verbal assault. Well, couldn't that really be reasonably construed there is that this was a verbal assault for 15 minutes? You know, yelling and screaming back and forth, that kind of thing. Well, he doesn't say that he did. I agree with you. Well, but she did then. Yes, for 15 minutes. But she could have been standing there haranguing him. She could have been. Okay. Is that a reasonable assumption? All these allegations. Is that kind of how the court construed that particular comment? Yes. All I'm saying is that under, and I know you know the law, there's 2615 that all these allegations are true. And the complaints were unfounded. Right. But saying that somebody assaulted me for 15 minutes doesn't necessarily come into defamation per se, does it? If you could say it was a verbal assault? I don't know. I'm just saying. Again, I'm breaking them down as separate things because I wanted to break them down as separate things. But we talk about verbal and physical together. He does talk about that. What was that one? Was that she verbally or she assaulted and battered me for 15 minutes or did he say she assaulted me for 15 minutes out in the field or something? Two separate things. At least as we read what he wrote, two separate incidents. The defendants argue that in order to state a claim for defamation, the alleged defamatory statement must be made to an unprivileged communication of that. In other words, it must be an unprivileged communication of the alleged defamation statement and it must be treated in your complaint in order to state a complaint. We did allege that it was not a privileged statement. We did. I'm sorry. I'm sorry. Yes, we did. We did plead that it was not privileged. Let's look at your third amendment. You pleaded that the privilege was abused. Did you plead that there was no privilege? I'm sorry. I'm sorry. I see in count 1 paragraph 50, you say they were not protected by qualified privilege and for purposes of 615, you're going to take that as true? Yes. Okay. Yes. I got you. Yes, we did plead that.    Even though it's merely an unprovided claim? Yes. Okay.        Okay. Okay. And I think that's not an unprovided conclusory. It is a conclusion, Judge. Unsupported by that. Yes, but, but, my position is that they argued that in the motion in the third amendment complaint and Judge Kalihan did not rule on that basis. I don't think you would be ruling on that unless it was a 2619. I agree with you. But I could be wrong. No, I think it wasn't. You're right. This was a 2615. In our mind, qualified privilege would have to be investigated and it's factually driven. And we didn't get to that stage. Yeah. Right. If I may, then do you want me to proceed? Sure. Any more questions? Okay. We suggest that his complaints disclose his animosity when he said I signed away an agreement even though I knew it was all BS. I've done everything I could to avoid the person. When I looked at the letter, I hated to sign it. I sounded like a stalker. He invokes his own daughter and assumed the athletes needed to be protected from plaintiff's unsafe behavior. He said he was prepared to protect himself and students from the bias. What does that mean? So he takes it to HR. But it sounds like a threat and I'm not saying that's part of the case. But that's a pretty compelling statement. In this day and age, what does prepare to do mean? To express the need to actually protect himself and the students from the bias conveys so much more than aggravating some parents. It gives greater context to his false allegations of verbal and physical assault, suggests that she could verbally and physically assault students. And everything he said was deemed unfounded. As head cross country coach, he was her supervisor. He was also her special education behavioral interventionist. He had to intervene with students and on behalf of all the students or a single student or her when there were special needs kids with problems but also in a physical manner. Defendant said he knew how to do that. That's why that's in here. He understands a behavioral intervention. So it conjured a 15-minute argument. Defendant John Stelzer is the athletic director. He reports directly to Stelzer. And I want to get to the Qualified Immunity and Tort Immunity Act. Again, assertions that were made in the lower, only qualified immunity was made in the lower court. I believe it's a factual issue. The Tort Immunity Act was not raised there. It was raised here for the first time, which I think is inappropriate. But even if you consider it, both of those, based on how they're arguing it, are factually. Well, again, I think that that's a 2619. That's right. I agree. And I don't believe that the court addressed that anyway, did it? No, it did not. And you're saying they're raising that for the first time. Yes. Well, they're out of context of 2615. I agree with you. The court said that the statements are, well, again, this is de novo review, so rehashing what the court said probably doesn't mean much. But, again, I want to go to the employment case situation. These aren't inaccurate. These aren't ambiguous. They don't suggest a harmless interpretation. Did the lower court strongly find an unnatural, innocent meaning? Yeah, an employment dispute where people might have differences, but the lower court provided no other alternative, innocent meaning, other than to state that this was an employment claim. To the extent that this court considers, strike that. At this point, I'm going to reserve, unless you have any other questions. That's fine. And I didn't mention that earlier, but we will allow you some time for rebuttal. Thank you. All right. If I knock over one more thing. Ms. Luckner, you're going to present first. Is that what you're saying? All right. And then counsel's Jennifer. Will each of you combined has 15 minutes? Yes, we understand that. I'm sorry, both of you. Right. We know. All right. Total of 15 minutes. Okay. Plaintiff's entire argument that the complaints are defamatory is made by taking those two complaints apart and looking at them out of context. Let's go right to the most significant ones, if you will. He was rolling around on a bed in a hotel alone with an athlete as witnessed by another coach who walked in. Okay. So let's look at the context of this. So, first of all, it's in an email that's headed big problem. And it starts out by Mr. Tarrant explaining, hey, something last year, me and this other employee had this issue. Today at my track meet, she showed up. Then he goes into the third paragraph and he says, I asked for a change, which, as the court noted, had to do with probably Ms. Tobias no longer being his assistant coach. And then he explains why. Because she was verbally and physically aggressive towards me, then made appropriate contacts with athletes, which he then defines as met with athletes without my knowledge, and finally, like the worst, was not supportive of our program even as our team improved. And then here's another context statement. Mr. Tarrant says, I need to have this taken care of ASAP or I will need to go to HR and file a formal complaint. What he's saying is, this isn't even a formal complaint. This is just an email that I called big problem. And I don't even have to go to the next step. I'm just sending you an email. And then he says, I keep trying to avoid her and it doesn't work. And then he says, and if I go to HR, this is what I'm also going to tell them, he says. So he's saying, I don't have a duty to tell anybody right now. It's nothing that rises to that level. But if you guys push me and make me go to HR by not addressing my concern right now, I'm going to say that she celebrated an athlete's accomplishment by drinking alcohol. Doesn't say that the athlete was present. Was rolling around in a bed along with an athlete. You're right. He does say that. And another coach walked in. But obviously, Mr. Tarrant doesn't think that this is rising to the level of sexual abuse of a student. Because he represents high schools. Isn't that your nightmare? That some parent is going to file a suit because a teacher is rolling around alone in a motel room with their child? I absolutely represent high schools. You know what? You don't look at it alone. You don't look at the statement alone. You find all of the circumstances. All right. So how do we reasonably construe this one? We reasonably construe it as roughhousing, I think, with a student on a track meeting. What is appropriate or what is roughhousing? I think you do not construe it as sexual abuse because I don't think that anything in this communication suggests that he is saying that she engaged in sexual abuse of a minor. Well, does it have to be sexual? A teacher rolling around on a bed with a student. Non-sexual, let's say. I'm not sure I agree with you that you can draw a non-sexual inference, but let's say that you can. A private hotel room, the door closed, just the teacher and the student, not just in there talking, rolling around together on the bed. Even non-sexual. Isn't that still, as Justice House said, pretty close to your worst nightmare in this school? First of all, I would say that it doesn't say that the door was closed. In fact, the door was apparently open because another coach walked in. And then secondly, you have to go down to the context, that last sentence, which he says, if everything that I'm saying is true and one of the students was my kid, I would be an extremely irritated parent. That sets the context. That makes it clear that he's not in any way claiming that she sexually abused him. She sexually abused a student. He's saying she did things that I think as a coach are not advisable. He said unsafe. He said unsafe. But he says, if any coach did those unsafe things that this coach has done, I would be an extremely irritated parent. And as an attorney that represents high schools, I would say that any coach that texts with a student is engaging in unsafe behavior, but not anything that's against the law and not anything that's defamatory. It's bad judgment. And again, you go to the context. If everything I'm saying is true, if all of these unsafe things happened, I would be extremely irritated. I don't think you can construe what he's saying as accusing her of saying, I'm going to go to Human Resources and report sexual abuse of a minor or even, I guess, or even grooming or something like that, because he says that the worst thing you can get out of everything I'm saying is that a parent would be extremely annoyed. Well, is there an obligation had this been sexual abuse for this individual to have reported? Yes, and I think the fact that he didn't report it, and he says at the beginning, if this isn't addressed, I'm going to have to go to HR, indicates that he doesn't think that it was. Is that something we can take notice of? That there is an obligation under state law that any teacher such as Mr. Tom Tarrant, I don't know how you say his last name. Tarrant. Had an obligation, had this been a criminal act of any kind. He has an obligation, doesn't he, to report? I'm not sure the relevance of it. He has an obligation to report, but he doesn't report. Is this how we construe this as something other than a criminal act? Yeah, I can see that argument. What about the 2 a.m. athletes, drunk and high, went to where the athletes were, hung out with them, and took them home without notifying parents of the athletic office? How do we reasonably construe that one? I think you reasonably construe that as a coach resolving an issue by making sure that the athletes don't get qualified from participation on the team for using drugs. Well, it says that he hung out, she rather, hung out with them. The athletes called her. They were drunk and high. She went to where they were. She hung out with them and got them home. I think that that sounds like a coach dedicated to the students who did not want the students disqualified from the team. I think that it happens all the time. It's not defamatory. I don't think it shows good judgment. What does the court mean, not that we're looking at his reasoning because we're reviewing this de novo. What did the court mean when he said this is just an employment issue? What is he talking about? I think he was talking about, for example, under Illinois law, when you're considering intentional infliction of emotional distress, there's a body of law that says that the things that happen that arise out of the employment relationship are seldom sufficiently extreme or outrageous to constitute intentional infliction of emotional distress. These counts were defamation per se and invasion of false light. I understand. I think what the court was noting is that people can get very heated in the employment context and you need to be focusing on that context when you're interpreting what was going on here. These complaint documents were one employee complaining about another, bringing the concern to his supervisor and human resources, and I think what the court was saying is employment provides more context for the understanding of these statements. Is it okay for a teacher to hang out with underage students, student athletes or just students, period, who are using drugs and alcohol? And then take them home? No, no, no. That's a separate issue. Taking them home is fine. Taking them home is fine. I don't think that Mr. Tarrant was trying to pay her a compliment here. Yeah, that's a nice piece of information contained in that paragraph, that he took them home. It sets the context. I agree. But is it okay for a student, for a teacher to hang out with students while they are taking drugs and drinking? There is no law against it and, in fact, you wouldn't be able to prevent it, but I think it shows pro-judgment. Okay, there's no law against it, perhaps. Perhaps there is, perhaps not. But putting aside a law, don't you think that that would, if that was known about a teacher, that that would damage their reputation as a teacher? I think you would have to look into the circumstances of it, especially when you're talking high school students. But we don't have circumstances here. We have something in writing that's sitting right here. We don't get the circumstances. The court needs to look at the context of this, and the context is this is a non-formal complaint. I don't need to file a formal complaint, and if I was a parent and knew all this stuff, I would be annoyed. I think that to lead to greater conclusions which contradict the context that Mr. Tarrant gave the document when he created it is going beyond the document and taking the statements out of context, which is what plaintiff's argument is based on. Well, what about the court dismissed the complaint with prejudice, correct? Correct. And should this case be remanded for at least leave to amend a per-quad if, as you say, these do not amount to defamation per se? Should this complaint be dismissed without prejudice, even though counsel hasn't submitted one? Should this case be dismissed without prejudice in light of these allegations? I don't believe so. I think what happened in this case was plaintiff identified the documents that contained the supposedly defamatory statements by attaching them to the complaint. And when you read through those documents and you consider them entirely in context and giving all of the words their natural meaning, including the things like if I would be extremely irritated if that was my coach and my child, I think what the court was saying is that there's no way that these documents constitute defamation. And so, no, I don't believe the case should be remanded. I think that there's no question. Well, isn't there a difference? Is it solely in the use of the words? Isn't there a difference between per se and per-quad in terms of the content? There is. Yes. My question to you is that you're saying that under no circumstances could this state a cause of action, per se or per-quad. That's correct. I'm saying that the context renders them not defamatory. They are not something that would cause third parties to refuse to associate with the teacher when you read the whole thing in context because it was given a lot of context. Rolling around on a bed in a hotel room. In the context of I'm not making a formal complaint now, but if you don't address my concerns, I will. All right. Okay. I just want to move on to the next document real quick just to make sure that we address any questions you have about this. If you look at the second complaint document, that's the one dated November 12, 2013, Mr. Tarrant says he starts out by saying this is a grievance, which sets the context as this is an employment dispute. He says I'm filing against the plaintiff for intimidation and harassment based on the following event. So he identifies exactly what's the intimidation and the harassment, and that is the fact that she shows up at this track meet, which he then goes on to describe for the next two paragraphs. Then at the bottom, and these are where the defamatory statements start to come in, Mr. Tarrant says here is why I'm making this complaint now, he says. Here's why I'm telling you, human resources people, why I'm bringing this complaint to you about her attendance at the track meet. She left her classroom and verbally assaulted me about the cross-country program. The only thing that that can possibly mean is she yelled at me about my cross-country program. Then she physically assaulted me by grabbing my arm and tried to force me into a school room at the end of the day. Sounds like she grabbed his arm and tried to make him talk to her. Sounds like a battery. Sounds like a crime. Sounds like she grabbed his arm and tried to force him into a room. I don't think that's the sort of thing that would deter third parties from associating with the teacher. You don't think so? I think it sounds like a very heated argument. You don't want to be in the workplace and have other employees physically assaulting them and forcing them into a room? You don't think that people want to be with those kind of people? I think it sounds like misconduct. I don't think that necessarily employment misconduct is, an allegation of employment misconduct is defamatory. All right. He says she entered my workspace again, basically saying that's what happened in numbers one and two,  I don't think he's really argued beyond that. But they set the context. All right. They set the context. He's saying all of these disputes in this list, they all have to do with our dispute over the cross-country program. Then number four is completely about the cross-country program. He says she filed false reports after I wasn't going to let her be my coach. I think you're talking about employment misconduct. She's saying false things about me, but not something that's defamatory. Do we take only your context, or do we take her context, too? I'm using the context that's in the document. All right. So that's all we're looking at. I'm only looking at what- That's all we should look at. That's all I think you should look at, too. All right. Plaintiff attacks the document, the documents are very clear, and they have a ton of stuff in them, all of which I think under Illinois law go into this is the context. Okay. All right. Then you go to the second page, and he says all of these events, which he just related, are coming to my track meet, and then our disputes over the cross-country program are intentionally intimidating and harassing. And then he says it's my opinion, I feel unsafe and threatened. And then he says she drove over 300 miles to disrupt my team. Again, that's his opinion. He says this is scary to me and my family. I think that's opinion. I don't think that's fact, and I don't think that it's actionable. And then he sets a context for how scary it is. He says she's making it difficult for me to perform my job at 100%. That isn't very scary. I think that there's a lot of times that we can't perform our jobs at 100%, and that's the worst he's saying. That's how scary she is. He sometimes can't perform his job at 100%. So do you have any more questions? No. All right, Council. May it please the Court, Council. Sorry, I need to raise that a bit. I think when I – Would you like to identify yourself? Oh, I'm sorry. Jennifer Jones, yeah, on behalf of the defendants, Oak Park River Forest High School, Thomas Tarrant, and John Stelzer. Your name is? Jennifer Jones. Okay, I'm sorry. It's okay. Go ahead, Ms. Jones. So I wanted to follow up with the theme that my co-counsel focused on in her argument. Context is everything. When opposing counsel got up here, the issue of privilege came up. And counsel argued that we improperly raised that issue in our brief. It is our position that in this case, the issue of privilege is a 2615 issue. Plaintiff attached these complaints, the grievances, I'll say, to her complaint. It identifies who these statements were made to. If you look at who these statements were made to, we're looking at HR, administrators, and a union representative. All of these people under the proper privilege test have an interest in these statements. Counsel misstated in his brief the old five-part test for privilege, which essentially would place the burden on the employer to show good faith in making the statements. However, in the Kuwik case, the Illinois Supreme Court actually adopted the restatement test, and it's a three-part test which takes the burden off of the employer to argue or to establish good faith for privilege to apply. So you only need one of three elements. You need the person making the statement to have an interest in the statement, the person who is the recipient of the statement to have an interest in the statement, or the public to have an interest in the statement. We have a couple of issues here that I think might be factual in nature. One is whether the privilege was abused, which the plaintiff has stated in many places in his complaint that these statements were in fact false, that they knew they were false, or at a minimum they didn't investigate it, that they acted with malice. That's one thing I'd like you to address. And the second thing I'd like you to address is how can we be sure that the publication was limited to the people in this document? I mean, there's at least one other person mentioned in the complaint, and that's Ms. Donna Tucci, whatever her name is, the other assistant track coach. She's not on this email, but the complaint alleges that she was in the chain, and that wouldn't be privileged, would it? I don't believe that that's what a plaintiff has alleged. With respect to the defamatory statements, I believe that she has specifically stated in the complaint that they were published to John Stelzer, John Carlson, Frank Bogner, Nate Rouse, and Courtney Saccararis, who is the assistant athletic director, and then Sheila Harden, who is the union rep. And how do we know that that's the proper chain of command to go through? What tells us that those were the right specific people to go through? Well, as my co-counsel explained, when you look at the overall context of this case, this is an employment complaint that Mr. Tarrant was making. So it makes sense that in the employment context, you're going to go to your immediate bosses, who in this case would be John Stelzer and Courtney Saccararis. When the issue couldn't be resolved, it went to the next level of administration, which is human resources. John Carlson, Frank Bogner, and then Nate Rouse, the principal, would be the higher level administrators. The only issue that I could maybe see here would be Sheila Harden, the union rep. A plaintiff has tried to characterize this by using the word grievance. He cites in his brief, essentially, the union contract and alleges that Tom Tarrant abused his privilege by publishing this to Sheila Harden, the union rep. The union rep. by law has a duty to a fair representation to both Tom Tarrant and Danielle Tobias. They're both union employees, union faculty members. So there's a clear interest in the union, knowing of this interpersonal conflict going on between two employees that it represents. Would a question of privilege, qualified privilege, and abuse of a qualified privilege, in your opinion, normally be brought on a 2615 failure to state a claim? Not normally, but I believe in this case, because plaintiff has attached these complaints to her complaint, I think that it's part of the 2615. So you think we can determine as a matter of law that these exhibits demonstrate qualified privilege and or no abuse of a qualified privilege as a matter of law? I believe so. And to address, as I said, the only issue I would see, you can look and see who these statements were sent to. Plaintiff doesn't allege in her complaint that these emails were then forwarded to any other individuals. No, but they do, the complaint does allege that the defamatory statements were not protected by any qualified privilege and alternatively, if they were protected, the privilege was abused because the statements were false and defendant knew they were false and or were not investigated prior to the statement's publication. And we accept that as true, even though part of it is conclusory. So how do you determine as a matter of law that these are qualified and or that the privilege was abused as a matter of law? Because as a matter of law in this situation, these are statements made by someone with an interest in the statements to someone with an interest in the statements. And then if you want to look at the broader context, we're talking about a public school district, so the public has an interest in these statements as well. If my kid goes to Oak Park-Liver Forest High School, I mean, I'm going to want the district as an employer to have the ability to investigate complaints between employees that could spill over and affect the students. Who's Nathaniel Rouse? The principal. Yeah, how do we know that? Who's Bogner Frank, John Carlson? Are these things we know from the record or something? I'd have to check, but they should be in the record. All right. But, counsel, how do we know? I don't think anybody on this side is saying that we are sure it's not privileged. It very well may be privileged, but at this stage, how do we even know what the proper chain of command was? How do I know that it wasn't supposed to be the school superintendent they went to and that they acted completely out of line in giving it to the interim HR person or to the principal? We have no way of knowing what the proper chain of command is, do we? Well, there's two things. I think that, first of all, to address the issue that plaintiff has raised in regard to your question, he alleges that Tarrant abused his privilege by essentially not going through the proper chain of command. He cites the collective bargaining agreement in support of that argument, which was attached to the complaint. I want to know what the proper chain of command was and how I know that right now. Well, it's not within the collective bargaining agreement. I think this is when the court looks at the overall context. We're talking about an employment situation. Do you need to spell out to employees that they have to go to this person when, you know, it's common sense that Tom Tarrant would go to his supervisor first. You know, that's John Stelzer, Courtney Seckler, his supervisors. When his complaints weren't resolved, then he goes to the principal and HR. I mean, this isn't a megacorporation with many different chains of command. I mean, it's a school district with a pretty clear chain of command in terms of who reports to who and district administration that oversees essentially everything happening in the district. So to answer your question, there's really no one else to report these complaints to other than the school superintendent. I mean, I suppose that he could have taken it to that level. He chose not to, which actually supports that he wasn't making these arguments. I mean, qualified privilege is a knockout punch. I mean, for us to be able to say we agree to throw all these claims out because we're sure that this was privileged, it seems like we have to have a stronger record than what we have here. I don't see how we can know as a matter of law what the proper chain of command was and therefore that they did or did not follow that proper chain. Well, I think that there's plenty of case law that supports statements just like these, employees complaining about one another to their supervisors, that supports that if an employee is complaining to any supervisor, and that's all I'm seeing here. Did the judge rule on the qualified privilege? No, but it was raised for the first time on appeal. No, it's in the record. No. Did you raise this before the trial court, the qualified privilege? Yes, the qualified privilege, yes. All right. Because I thought counsel said you didn't. I don't know. Maybe he was talking about the other issue. I think tort immunity. Right. I think she's referring to this. Yes, correct. Tort immunity portion. Anything further you want to add? No, that's all. All right. Mr. Esposito, a final word. I just want to add this. I think I did clarify that it was qualified privilege they did assert, but not tort immunity, which was alleged for the first time. I just spoke. I have to. If I can explain a little bit, because it's in the complaint. So it went from Tarrant to Stelzer, and then Stelzer went down to his subordinate, Secularis, but they included Sheila Harden. And she was there as an observer. She didn't need to be there. And that's why we alleged a union contract. There's no reason for her to be there at that point. And the contract says you don't bring in a union rep until later. So counsel just said she was there as an observer for the benefit of the people and the school and the union, whatever it is. There's no such thing as an observer. That's not what you do, especially not in this context. So it's alleged as it is. I just wanted to try and give you a little flow of what happened there. Also, Your Honor, I think the comments about the privilege and abuse of the privilege are well noted. And I guess what I get to is this. They said, context, context, context. And I think you hit on it. You said what you didn't say, and I think you were thinking was, okay, context is great, but what would a reasonable person think of these comments, which is what the law is. Not the context of the memo. I don't care how many watered-down things they want to suggest are in the memo. Those statements are there, and they pop out. And while counsel talks about the fact that it was only an email, that email was investigated. She was subjected to a formal investigation based on that email and the second document. She underwent two thorough investigations, and both were deemed unfounded by HR. They chose to show it to Sheila Harden. I have to end with this. The context of roughhousing, which I addressed in the brief. You know, we're supposed to look at the words that are stated. There's no qualification that she was rolling around in a bed with a guy and dot, dot, dot. They said it was just roughhousing. I will tell you this, and I'm not trying to over-personalize this, but I'd be more than concerned about my 13-year-old daughter if I found out that some coach was roughhousing with my kid. That's a serious matter, and it's a serious charge. And on that basis and everything else I've said, unless you have any questions, I'll stand on that. All right. We have no further questions. We appreciate the arguments today. The matter will be taken under advisement. Thank you all. Thank you all very much.